UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

WAHEED ALLAH MOHAMMAD,

       Petitioner,

  v.                                       26-CV-132-LJV
                                               DECISION & ORDER

DAVID KURZDORFER et al.,

       Respondents.

───────────────────────────────

Waheed Allah Mohammad has spent more than eight months in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  *See* Docket Item 1 ¶¶ 1-3; Docket Item 9 at 3.[1]  On January 22, 2026, Mohammad filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility in Batavia, New York.  *Id.*  On February 10, 2026, the government answered the petition, Docket Item 8; and on February 12, 2026, Mohammad replied, Docket Item 9.

For the reasons that follow, the Court grants Mohammad's petition and orders his release.

### BACKGROUND[2]

Mohammad "is a native and citizen of Afghanistan" who "has lived in the United States since 2004 when he lawfully entered" as a refugee.  Docket Item 1 ¶ 1; Docket

───────────────────────────────

[1] Page numbers in docket citations refer to ECF pagination.

[2] The Court takes these facts from the petition, Docket Item 1, the government's response, Docket Item 8, and Mohammad's reply, Docket Item 9.

Item 8 ¶ 3; Docket Item 8-3 at 3.  On April 6, 2006, he obtained lawful permanent resident ("LPR") status.  Docket Item 8-3 at 3.

A few years later, Mohammad was convicted of attempted first-degree murder and assault in New York State's Monroe County Court.  Docket Item 1 ¶ 17; Docket Item 8-3 at 8, 10-12.  After his conviction, Mohammad was placed in removal proceedings, and on May 31, 2012, an Immigration Judge ordered him removed. Docket Item 1 ¶¶ 17-18; Docket Item 8-1 at 2.  But the Immigration Judge also granted Mohammad deferral of removal under the Convention Against Torture, Docket Item 1 ¶¶ 1, 18, which meant that he could "be removed from the United States to any country except Afghanistan," Docket Item 8-1 at 2.

After release from custody in his criminal case, Mohammad "was detained by ICE."  Docket Item 1 ¶ 20.  But in June 2017, after about six months in custody, ICE released him on an order of supervision "[b]ecause [it] ha[d] not effected [his] deportation or removal."  Docket Item 8-3 at 25; *see* Docket Item 1 ¶ 20.  Mohammad's release was conditioned on, among other things, his appearing for check-ins with ICE. Docket Item 8-3 at 22-23, 25, 27.  The notice of release also assured Mohammad that he would "be given an opportunity to prepare for an orderly departure" once ICE obtained a travel document.  *Id.* at 23.  But ICE did not cite the authority—more specifically, it did not cite the ICE regulation—governing Mohammad's release.  *See id.* at 22-29.

While released on supervision, Mohammad "fully complied" with all requirements, Docket Item 1 ¶ 22, and "became a positive force in his community," *id.* ¶ 21.  He owns

a home, "co-owns a restaurant and convenience store with his brother," and has two children "ages seven and five."  *Id.*

Nearly nine years after Mohammad was released from custody, ICE detained him again on January 1, 2026.  *See id.* ¶ 23.  That same day, ICE issued Mohammad a notice of revocation of release, citing 8 C.F.R. 241.13 as the authority for his re-detention.  *See* Docket Item 8-3 at 30.  The notice indicated that an ICE officer named "Truax," whose title is "SDDO," revoked the order of supervision.  *See id.*  Moreover, "S. Burnside"—another ICE official—conducted an informal interview that day during which Mohammad read the notice of revocation, said that he understood it, and did not "provide a written statement" or "any documents."  *See id.* at 32.

Mohammad filed this petition for a writ of habeas corpus on January 22, 2026. Docket Item 1.  He alleges that his detention violates his right to procedural and substantive due process under the Fifth Amendment, the Administrative Procedure Act, and *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (2020).  *Id.* at 10-17.

The government answered the petition, arguing that (1) Mohammad has not met his burden under *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) that Mohammad is "incorrect to assume that [the] respondents did not [have] the authority to revoke the order of supervision"; (3) that Mohammad's APA claim fails; and (4) that this Court "lacks jurisdiction over [Mohammad]'s claims regarding [the] revocation of release [under] 8 U.S.C. § 1252[(g)]."  Docket Item 8-1 at 5, 6, 8 (capitalization and emphasis omitted).

**LEGAL PRINCIPLES**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a habeas petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in habeas courts to 'hear and determine the facts, and dispose of the matter as law and justice require.'" *Id.* (some alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

**DISCUSSION**

I.    **JURISDICTION**

The government initially "does not dispute that this Court has subject matter jurisdiction over [Mohammad]'s challenge to his continued detention," Docket Item 8 at 1, but it later argues that this Court "lacks jurisdiction over [Mohammad]'s claims regarding [the] revocation of release," Docket Item 8-1 at 6-8 (capitalization and emphasis omitted). More specifically, the government says that 8 U.S.C. § 1252 "strips district courts of jurisdiction over [cases] 'arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal

orders against any [noncitizen],'" and that Mohammad's claims arise from his removal order. *See id.* at 6. The government acknowledges that in *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 150-54 (W.D.N.Y. 2025), this Court held that section 1252 did not bar its review of a challenge to the manner in which ICE executed a petitioner's removal order, but it renews the arguments it raised in that case nonetheless. *See* Docket Item 8-1 at 6.

For the reasons explained in *Ceesay*, the Court rejects the government's jurisdictional argument. *See Ceesay*, 781 F. Supp. 3d at 150-54. To the extent that Mohammad seeks review of the manner in which his removal order was executed, section 1252 and binding precedent do not bar that review. *See id.*

## II.    DUE PROCESS

### A.    Authority to Revoke an Order of Supervision

#### 1.    Statutory Background

Section 1231 governs the detention and removal of noncitizens with final orders of removal. 8 U.S.C. § 1231. It "provides that, after 'a[ noncitizen] is ordered removed,' the [g]overnment shall remove the [noncitizen] within a ninety . . . day period called the 'removal period.'" *E.M.M. v. Almodovar*, 2025 WL 3077995, at *2 (S.D.N.Y. Nov. 4, 2025) (citing 8 U.S.C. § 1231(a)(1)(A)). That period begins "on the latest" of three possible dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); *see also Hechavarria v. Sessions*, 891 F.3d 49, 54-55 (2d Cir. 2018, *as amended* (May 22, 2018)).  But "[i]f the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).

> The regulations shall include provisions requiring the [noncitizen]—
> (A) to appear before an immigration officer periodically for identification;
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States [g]overnment;
> (C) to give information under oath about the [noncitizen]'s nationality, circumstances, habits, associations, and activities, and other information [ICE] considers appropriate; and
> (D) to obey reasonable written restrictions on the [noncitizen]'s conduct or activities that [ICE] prescribes for the [noncitizen].

*Id*.  The parties agree that Mohammad "is detained [under] 8 U.S.C. § 1231."  *See* Docket Item 8-1 at 3; *see also* Docket Item 1 ¶¶ 30-33, 77-78.

## 2.    Sections 241.4 and 241.13: Regulatory Framework

Noncitizens detained under section 1231 but then released on an order of supervision can later be re-detained if the order of supervision is revoked.  8 C.F.R. § 241.13(i); 8 C.F.R. § 241.4(l).  Two ICE regulations—8 C.F.R. § 241.4 and 8 C.F.R. § 241.13—govern revocation.  *See E.M.M.*, 2025 WL 3077995, at *3.

Section 241.4 authorizes ICE to issue an order of supervision for a number of reasons but to revoke such an order only for two reasons.  "First, [ICE] may revoke an [order of supervision granted under section 241.4] if the [noncitizen] violates any . . . terms of his or her release."  *Id.* (citing 8 C.F.R. § 241.4(l)(1)).  Second, ICE can revoke an order of supervision granted under section 241.4 if certain findings are first made by

the ICE Executive Associate Director[3]—or by an ICE district director or other authorized official if the district director or authorized official finds that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]." *Id.* § 241.4(l)(2); *see Ceesay*, 781 F. Supp. 3d at 159-62. More specifically, to revoke a section 241.4 order of supervision, the Executive Associate Director or, if he or she is unavailable, the person authorized to act for the Executive Associate Director, must conclude that

> (i) The purposes of release have been served;
> (ii) The [noncitizen has] violate[d] any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against a[ noncitizen]; or
> (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2).

Section 241.13, on the other hand, "establishes 'special review procedures'" for issuing an order of supervision to a noncitizen detained under section 1231. *E.M.M.*, 2025 WL 3077995, at *3 (citing 8 C.F.R. § 241.13(a)).

> These "special review procedures" begin once a[ noncitizen] submits a written request providing reasons why there is no significant likelihood the [g]overnment will remove him or her. 8 C.F.R. § 241.13(d)(1). The written request triggers a formal review by the Headquarters Post-Order Detention Unit ("HQPDU"). 8 C.F.R. § 241.13(e), (f). Once the review concludes, the HQPDU issues a "written decision" regarding "whether there is a significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future under the circumstances." 8 C.F.R. § 241.13(g). If that likelihood is low or not significant, the HQPDU may issue the [noncitizen] an [order of supervision under s]ection 241.13(h).

---

[3] The regulation refers to the "Executive Associate Commissioner," but the equivalent position under the current statutory scheme is the "Executive Associate Director." *See Ceesay*, 781 F. Supp. 3d at 160.

*Id.* The "scope" of section 241.13 is clearly limited: orders of supervision are issued under this section only when "the [noncitizen] has [first] provided good reason to believe there is no significant likelihood of removal." *Id.* at *4 (quoting 8 C.F.R. § 241.13(a)). "Like [s]ection 241.4, [s]ection 241.13 provides two bases for revoking an [order of supervision]," *id.* at *3: if the noncitizen violates a term of release, 8. C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [ICE[4]] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," *id.* at § 241.13(i)(2).

Courts in this circuit and others have spelled out the relationship between section 241.4 and section 241.13. *See, e.g.*, *E.M.M.*, 2025 WL 3077995, at *2-5, *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017). In *E.M.M.*, the court found that section 241.13's plain text suggests that the government may revoke an order of supervision under that section only if it first issued the order under that section's "special review procedures." *E.M.M.*, 2025 WL 3077995, at *4. The court explained that under "[s]ection 241.13's 'scope' provision," that section and its revocation subsection apply only when the noncitizen "provide[s] good reason to believe there is no significant likelihood of removal." *See id.* (quoting 8 C.F.R. § 241.13(a)). Further, section 241.13's "'relationship to [s]ection 241.4' provision" indicates that if the specific section 241.13 findings are not made and section 241.13 therefore does not apply, section 241.4 "shall

---

[4] The regulation uses the term "the Service" which "is a defined term and encompasses 'U.S. Citizenship and Immigration Services, [CBP], and/or [ICE], as appropriate in the context in which the term appears.'" *E.M.M.*, 2025 WL 3077995, at *3 (quoting 8 C.F.R. § 1.2).

continue to govern" the noncitizens' detention and re-detention.  *See id.* (quoting 8 C.F.R. § 241.13(b)(1)).

In *Rombot*, the court reached the same conclusion and found that "[t]o apply section 241.13, ICE must [first] 'make a determination that there is no significant likelihood of removal in the reasonably foreseeable future.'"  296 F. Supp. 3d at 387 (alterations omitted).  And if ICE does not make those findings, the court said, section 241.4 governs the noncitizen's re-detention, even if ICE says otherwise.  *See Rombot*, 296 F. Supp. at 386-87.

This Court agrees with that straightforward reading of sections 241.13 and 241.4: Unless ICE follows section 241.13's "special review procedures" when issuing an order of supervision, a noncitizen's detention—and therefore re-detention—is governed by 8 C.F.R. § 241.4.

Here, Mohammad's revocation notice indicates that section 241.13 governed his re-detention, *see* Docket Item 8-3 at 30, but he argues that any revocation of his order of supervision actually is governed by section 241.4, Docket Item 9 at 5.  This Court agrees with him.

Mohammad's notice of release and order of supervision do not specify whether he was granted release and supervision under section 241.4 or 241.13.  *See* Docket Item 8-3 at 22-29.  But there is no evidence in the record that Mohammad ever "submit[ted] a written request for release to the HQPDU asserting the basis for [his] belief that there [wa]s no significant likelihood that [he would] be removed in the reasonably foreseeable future," *see* 8 C.F.R. § 241.13(d)(1); that ICE's HQPDU reviewed such a request, *see id.* §§ 241.13(e)-(f); or that ICE made a finding that

removal would not occur in the reasonably foreseeable future, *see id.* §§ 241.13(a), (g). In other words, there is nothing in the record to suggest that ICE applied section 241.13's "special review procedures." *See id.* § 241.13(a).  And if ICE did not follow those procedures when issuing an order of supervision, it cannot later try to correct that deficiency simply by stating in its notice of revocation that section 241.13 governs re-detention by fiat.  Indeed, that would be nothing more than an ad hoc rationalization of why the order of supervision was issued in the first place.

In sum, because there is no evidence that ICE issued Mohammad's order of supervision under section 241.13, it must have been issued under section 241.4. Therefore, "[i]f ICE intended to revoke [Mohammad]'s release, it was required to follow the procedures set out in 8 C.F.R. § 241.4." *See Rombot*, 296 F. Supp. 3d at 387.

### 3.    Authority to Revoke Mohammad's Order of Supervision

The Court now addresses the revocation of an order of supervision under section 241.4—and specifically section 241.4(l)—just as it did in *Ceesay*.  *See* 781 F. Supp. 3d at 159-62.  In that case, this Court found that the revocation of an order of supervision under section 241.4 must be signed by ICE's Executive Associate Director; in the alternative, the Court said, a revocation can be signed by a district director or another official "delegated the function or authority for a particular geographic district, region, or area"—but only after finding that revocation is in the public interest and that the circumstances do not reasonably permit referral of the case to the Executive Associate Director.  *See id.* (citing 8 C.F.R. §§ 1.2, 241.4(l)(2)).  If a revocation of release is not signed by one of those officials, the revocation is improper under section 241.4(l) and abridges the noncitizen's right to due process.  *See id.* at 162.  Moreover, the Court held

that a petitioner whose order of supervision was not lawfully revoked under 8 C.F.R. § 241.4 is entitled to release under the conditions in the prior order of supervision. *See Ceesay*, 781 F. Supp. 3d at 162, 170.

Mohammad's notice of revocation of release was not signed by anyone with the authority to revoke an order of supervision under section 241.4. On the contrary, his revocation was signed by "Truax," an ICE "SDDO," *see* Docket Item 8-3 at 30, which appears to stand for "Supervisory Detention and Deportation Officer," *see, e.g.*, *Fontanelli as Next Friend of Bernal Garcia v. Francis*, 2025 WL 2773234, at *1 (S.D.N.Y. Sept. 29, 2025); *United States v. Sun*, 604 F. Supp. 3d 76, 78 (W.D.N.Y. 2022). But an "SDDO" is not the Executive Associate Director of ICE or a district director, and there is no delegation order giving SDDO Truax the authority to revoke release. And even if one of those things were true, there is no evidence that Truax made the required findings—that revocation is in the public interest and that the circumstances do not reasonably permit referral of the case to the Executive Associate Director—before revoking Mohammad's release. *See Ceesay*, 781 F. Supp. 3d at 161- 62. So because Truax did not have the authority to revoke Mohammad's release, the revocation of release is invalid.

The government does not address that procedural deficiency. Instead, it says only that *Ceesay* is inapposite because it was decided under 8 C.F.R. § 241.4 and Mohammad's OSUP revocation is governed by section 241.13. Docket Item 8-1 at 8-9. But for the reasons explained above, this Court already has rejected that argument and found that section 241.4—not section 241.13—governs ICE's revocation of Mohammad's order of supervision. *See supra* II.A.1-2.

Therefore, there is no evidence that the official who signed Mohammad's notice of revocation of release had the authority to do so.  For that reason, Mohammad's release was not properly revoked, and he is entitled to release.  *See Ceesay*, 781 F. Supp. 3d at 162, 170; *see also Rombot*, 296 F. Supp. 3d at 389. And because that procedural deficiency alone entitles Mohammad to release, the Court need not address his other arguments.

## CONCLUSION

For all the reasons stated above, Mohammad's petition is GRANTED.  More specifically, the government shall release Mohammad within 24 hours of this decision and order.  *See Ceesay*, 781 F. Supp. 3d at 162, 170; *see also Rombot*, 296 F. Supp. 3d at 389.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 24 hours of this decision and order**, the government shall release Mohammad from detention; and it is further

ORDERED that **within three days of the date of this decision and order**, the government shall file a status report certifying compliance with this order.

SO ORDERED.

Dated:      March 9, 2026
            Buffalo, New York

                                         /s/ Lawrence J. Vilardo
                                        _____
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE